Argued July 16, affirmed November 23, 1926, petition to modify denied January 11, 1927.

# SECURITY SAVINGS & TRUST CO., ADMR., *v.* CLARENCE H. GILBERT ET AL.

(250 Pac. 749.)

Trusts—Deed to Grantor's Attorney and Another, Recorded After Grantor's Death With Declaration of Trust Prepared by Attorney, Held not to Vest Absolute Title in Grantees, Where Intended to be Left Only Temporarily With Attorney, and Trust was Invalid.

1. Deed by deceased to his attorney and executor, made only to attorney and recorded after death of grantor, together with declaration of trust for grantor's son prepared by attorney in accordance with alleged oral agreement with grantor, *held* shown to have been intended only to be left temporarily with attorney to protect grantor's property against contingency arising from an interlocutory divorce and not to vest absolute title in grantees, and hence trust was invalid.

Attorney and Client—Transaction Transferring Client's Property to
  Attorney is to be Given Effect According to Understanding of
  Client, and not Words Used by Attorney.

  2.    Transaction between attorney and client, transferring client's
property to attorney for certain purpose, should be rigidly scruti-
nized and be given effect in accordance with understanding of
client, and not words used by attorney.

Attorney and Client, 6 C. J., p. 686, n. 21.
Quieting Title, 32 Cyc., p. 1372, n. 26.
Trusts, 39 Cyc., p. 87, n. 79 New.

From Multnomah: Robert G. Morrow, Judge.

Department 2.

This is a suit to quiet title and involves the validity
of a deed wherein Robert H. Thompson, Jr., who died
in February, 1922, is grantor and Clarence H. Gilbert
of Portland and the First Federal Trust Company, a
corporation, of San Francisco, are grantees.   Robert
R. Henry Thompson, one of the defendants in this
suit, is the minor son of Robert H. Thompson, Jr.,
deceased.

The deed in question bears the date of August 17,
1918.   Robert H. Thompson, Jr., died February 9,
1922, in California where he then resided.   On Feb-
ruary 14, 1922, the deed was placed on record by Mr.
Gilbert in Multnomah County, where some of the
property described therein is located.   At the same
time, Mr. Gilbert recorded an instrument in the form
of a declaration of trust, which was signed by him
alone and dated February 14, 1922, upon which date
the two instruments were recorded.   The First Fed-
eral Trust Company, one of the grantees named in
the deed, did not join in the declaration of trust and
knew nothing of the existence of the deed, or of the
alleged trust, until informed by a letter written by
Mr. Gilbert the same day the deed and declaration of

2.   See 2 R. C. L. 966.

trust were recorded, which was five days after the death of Mr. Thompson. The First Federal Trust Company had been the confidential adviser and had looked after the affairs and the properties of Robert H. Thompson, Jr., for a number of years just preceding his death, had been named as sole executor and trustee under a will, which he executed in January, 1918, coexecutor and trustee under a will, and grantee under a later deed dated August 17, 1918, which is the deed in question, and was named as sole executor and trustee under the last will and testament of Mr. Thompson, which was of a still later date and admitted primarily to probate in California and later probated in Multnomah County.

Defendant Gilbert answered, and, among other things, alleged that the deed was executed and delivered to him irrevocably under certain alleged oral trusts, which he afterwards declared and placed on record five days after the death of Robert H. Thompson Jr. Said declaration of trust, omitting the description of the property and acknowledgment, is as follows:

"WHEREAS, on the 17th day of August, 1918, Robert H. Thompson Jr. as grantor, executed and delivered a deed to the First Federal Trust Company, a corporation, of San Francisco, California, and Clarence H. Gilbert of Portland, Oregon, as grantees, which deed was placed of record in the deed records of Multnomah County, Oregon, on the 14th day of February, 1922, said deed transferring to the grantees therein named all of the following described property situate in the State of Oregon, to-wit: * *

"AND WHEREAS said deed was executed and delivered to said grantees, as trustees, and not otherwise, neither of said trustees to have by virtue of said deed any beneficial interest in said property, or any portion thereof;

"Now, THEREFORE, I, the said Clarence H. Gilbert, do hereby certify and declare that the aforesaid deed was executed and delivered as aforesaid by the said Robert H. Thompson Jr. to the said grantees, namely, myself, the said Clarence H. Gilbert, and the said First Federal Trust Company, as trustees for the sole and exclusive use and benefit of the said grantor, Robert H. Thompson Jr. during his lifetime, and after his death for the sole and exclusive use and benefit of his minor son, Robert R. H. Thompson, and not otherwise; and I further do hereby certify and declare that I do not have, nor claim to have any personal or beneficial interest of any name, nature or description in or to the aforesaid property or any part thereof, and the said Robert H. Thompson Jr. being now deceased, I further certify and declare that the only interest in said property, or any part thereof, which I have, or claim to have, is as a trustee for the use and benefit of the said minor Robert R. H. Thompson and not otherwise.

"IN WITNESS WHEREOF I have hereunto set my hand and seal to duplicate hereof this 14th day of February, 1922.

"CLARENCE H. GILBERT.    (Seal)

"In presence of:

"A. L. GORDON,
"MABEL E. WRIGHT."

The First Federal Trust Company answered alleging that for many years between October 1, 1917, and down to the death of Robert H. Thompson Jr., on the ninth day of February, 1922, it acted as the business agent and adviser of Robert H. Thompson Jr., deceased, with reference to his personal property and investments in California, and with respect to his real estate in Oregon, including all the real estate already described in the complaint, and was by the last will and testament of Robert Henry Thompson Jr. appointed the executor of his will and trustee of the

trusts therein provided for; that it disclaimed any knowledge of the conveyance set up by Gilbert, and of any trusts alleged by him excepting that, after the death of Robert H. Thompson Jr., Gilbert had notified them of the deed purporting to have been made by said Thompson to himself and the First Federal Trust Company, and which he had filed for record with a declaration of trust executed by him in duplicate on the fourteenth day of February, 1922; and that this was the first knowledge that it had of any such deed, or of any such trust, and asked for a decree of the court as to the validity of the alleged trust expressing a willingness, if such a conveyance and trust should be declared valid, to carry out its provisions.

The minor son of Robert H. Thompson Jr., deceased, namely, Robert R. Henry Thompson, appeared by guardian substantially claiming the validity of the trust as alleged by Gilbert and asked for proper equitable relief. The pleadings are somewhat involved and of great length, but the foregoing practically states the issue between the parties.

There was a decree in favor of plaintiff declaring the alleged trust invalid, and otherwise sustaining plaintiff's contention in the matter, from which decree the defendants Gilbert and Robert R. Henry Thompson have appealed to this court.

AFFIRMED.   PETITION TO MODIFY DECREE DENIED.

For appellant Robert R. Henry Thompson there was a brief over the name of *Messrs. Veazie & Veazie,* with an oral argument by *Mr. A. L. Veazie.*

For appellant Clarence H. Gilbert there was a brief over the names of *Mr. Martin L. Pipes* and *Mr. John*

*L. Pipes,* with an oral argument by *Mr. Martin L. Pipes.*

For respondent Security Savings & Trust Co., there was a brief over the names of *Messrs. Clark, Middleton, Clark & Skulason* and *Messrs. Teal, Winfree, Johnson & McCullough,* with oral arguments by *Mr. A. E. Clark* and *Mr. A. B. Winfree.*

For First Federal Trust Co., respondent, there was a brief over the name of *Messrs. Hendrickson & Scudder.*

McBRIDE, C. J.—There is really but one issue in this case and that is as to the validity of the trust claimed by defendant Gilbert. There are no questions of law upon which lawyers can substantially differ. There is no question but that, if Thompson executed the deed, which Gilbert, subsequent to his death, put on record with the oral agreement that it should take effect presently according to its terms, and in accordance with the oral trust, which Gilbert says accompanied its delivery, then, the trust was effective.

Mr. Gilbert's testimony is to the effect that Robert H. Thompson Jr., the deceased, married a young woman in California in April, 1918, after a week's acquaintance. In June, she sued for a divorce and demanded $100,000 as a financial settlement. In this trouble, Thompson called Gilbert to San Francisco to advise him. Thompson came back to Portland with Gilbert, who returned a few weeks later to San Francisco and made a financial settlement. Thompson had authorized Gilbert to pay, if necessary, as much as $50,000, but the settlement was made for $4,500.

Thompson appears to be a man, who gave most of his time to the enjoyment of life rather than to his business affairs. He was not very robust in health, but the condition of his health did not prevent him from indulging in a habit of frequently getting married and as frequently getting divorced. He had been the defendant in one breach of promise suit and the marriage of this young woman in California was his third matrimonial venture to which, before his death, he had added a fourth, and the suit he had just settled for $4,500 was his third divorce case.

Some idea seems to have arisen in Gilbert's mind as to the condition Thompson's property would be in as a result of the divorce, which his wife had obtained, and concerning which his wife had obtained a property settlement for $4,500 as above related. The divorce had been granted, but only by an interlocutory decree, which would not become absolutely effective until one year from the date of its rendition. Several plans were discussed of mutual deeds between the deceased and the wife as to the method of cutting off any right that she might have to property in Oregon. It was finally agreed that she would make a deed covering all the property in Oregon to the Title and Trust Company. Thompson, likewise, made a deed of like tenor to the same property, but this deed remained in the possession of Mr. Gilbert and was never delivered or recorded. It was finally arranged that Thompson should make a deed to the Title and Trust Company to be held in escrow until spring of the year within which the interlocutory decree might become effective, and, at the end of the year, to be delivered back to Mr. Thompson. Deeds in escrow were prepared, the whole of which appeared to be satisfactory to Mr. Thompson, excepting that he hesi-

tated to deliver them on account of the expense it entailed. A deed and escrow agreement was prepared and signed by Thompson. Then, as Mr. Gilbert testifies, Thompson said to him, "Suppose I die after the year is up, would that be good then?" Gilbert said; "No, I don't think it would." Then Thompson asked Gilbert to prepare one that would be good at any time, because he said he did not care to place it (the escrow deed) irrevocably beyond recall in a certain bank and refused to sign it. So, both the deeds being rejected, Gilbert testified that Thompson asked him to prepare a deed, which would be effective for the protection of his son in any event, and he thereupon prepared the deed under which he now claims, and which was executed by the deceased without any escrow agreement or declaration of trust excepting that afterwards declared by Gilbert and put on record after Thompson's death.

There are a multitude of circumstances which induced the lower court to believe, and cause us to believe, that there never was any intention on the part of Thompson to part absolutely with the property, or to do anything beyond protecting himself and his minor son until the time would have elapsed within which the interlocutory decree might be set aside. Thompson was a man who appeared not to have been very careful in the preparation of various instruments, and he placed great reliance upon the advice of Mr. Gilbert, who had been his attorney for a number of years.

It will be remembered that the main discussion all along had been principally in regard to placing some kind of a conveyance in escrow to some portion of Thompson's property in apprehension of the claim of his last wife, his design being to protect himself and his minor son from any contingency that might arise

by reason of the interlocutory decree being set aside. Two deeds had been prepared to be placed in escrow and the contingency upon which they were to be held was carefully specified in the escrow agreement. The first was rejected by Thompson by reason of the fact that he did not care to place his property, unconditionally or otherwise, in a certain bank. The second seems to be objected to by him upon the unique ground that it would cause him too great an expense in that it would cost a good deal of money to have the trust company as trustee.

1. We cannot believe that Thompson ever intended absolute delivery of this deed to Gilbert with the intent that it should pass the ultimate title to him and the alleged cotrustee, and that he would do this without taking some sort of written declaration of trust. He may have been a rather poor business man, but we cannot believe that he ever intended this deed to be anything but a temporary affair to protect his property for himself and his minor son against any contingency that might arise out of his last marriage and divorce.

2. It will be remembered that the First Federal Trust Company is the cograntee in the deed mentioned; that they were the San Francisco advisers and business agents of Robert H. Thompson, Jr., and that he, for several years after this alleged conveyance, did business with them and never at any time mentioned the fact that he had made them cotrustees of his property, which would have been the natural thing for him to have done considering his relations with that corporation. It will also be noted that Mr. Gilbert never informed the First Federal Trust Company that he had in his possession a deed conveying on its face the absolute title of Thompson's Oregon property to him-

self and the trust company as cograntees and trustees, which also seems improbable under the circumstances, if he felt that the conveyance was to be absolute. It also appears from the evidence that some time after this, Thompson made a conveyance to a small portion of the property, the deed being prepared by Gilbert and executed by Thompson, which would have been contrary to the stipulations of the alleged trust and contrary to the duty which Mr. Gilbert, as cotrustee, owed to the First Federal Trust Company.

It is also recalled that shortly after this a violent dispute arose between Gilbert and Robert H. Thompson, Jr., with regard to the amount of the fee which Gilbert had charged in the divorce case, and that Thompson had directed Gilbert to turn over to other parties the business of collecting loans and managing his Oregon properties and that Gilbert had done so and in none of the written exchanges between them was any reference made as to Gilbert being the trustee of the title of the Oregon property. It is very evident that Thompson a year or two before his death lost all confidence in Gilbert and, if he then had in his mind the fact that he had vested the absolute title to $100,000 worth of property in Gilbert as cotrustee, he would have made some effort to have had his trust set aside, or at least have informed the First Federal Trust Company of the fact that such a deed was extant.

It will be remembered that the deed was hurriedly executed after a discussion of the choice of several other deeds, which were in escrow, and whatever language Gilbert may have used, it is evident to our mind that Thompson never had any idea that he was vesting the absolute title in trust in Gilbert and the bank, or that he was doing anything more than to pro-

tect himself and his minor son from the contingencies of his last venture in the field of divorce, or, that he ever intended to do anything but to leave this deed in Gilbert's possession as his attorney to be used for the purposes above mentioned, in case it should become necessary. Transactions of this character between a client and an attorney should be rigidly scrutinized. Whether Gilbert used the term that he parted with the property absolutely or not is not of so much importance as what Thompson understood from the various discussions that he had with Gilbert as his attorney, which in our opinion had no other meaning to him than that Gilbert was to hold this deed as his attorney to be used should the contingency of his divorce suit require it.

A layman would probably not distinguish very distinctly between leaving a document with an attorney or delivering it to him as grantee and it is very evident that such distinctions were never explained to Thompson, and that he was, in our opinion, utterly ignorant of the intention to create such a trust as Gilbert had insisted upon here, or to do anything further than to make a deed and leave it with Gilbert as his confidential attorney to be used for the purpose we have above indicated. The testimony is rather voluminous, but we deem it unprofitable to attempt to give it in detail in the opinion.

We think the view taken by the Circuit Court in this case is correct, and that the decree of the court below should be affirmed.

AFFIRMED. PETITION TO MODIFY DECREE DENIED.

RAND and BELT, JJ., concur.